**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
ANTWONE FOSQUE,                     :
                                    :   Civil Action No. 09-6396 (JAP)
            Petitioner,             :
                                    :
        v.                          :   **O P I N I O N**
                                    :
DONALD MEE, et al.,                 :
                                    :
            Respondents.            :
_____ :

**APPEARANCES**:

Antwone Fosque, Pro Se
#452661/863029
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065

Nancy A. Hulett, Esq.
Office of the Middlesex County Prosecutor
25 Kirkpatrick Street
New Brunswick, NJ 08901
Attorney for Respondents

**PISANO, District Judge**

   Petitioner, Antwone Fosque, a prisoner at the East Jersey State Prison, Rahway, New Jersey, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Donald Mee, and the Attorney General of New Jersey.

   For the reasons stated herein, the petition must be denied.

**BACKGROUND**

**A.   Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's direct appeal.[1]  See Respondents' Appendix ("Ra") 7.

> These charges arose out of a robbery at a Burger King on Route 18 in East Brunswick.  Defendant was a former employee of the Burger King and friendly with a number of employees who were on duty the night of the robbery, including the manager, Jamila Colbert, and Rashanda Williams.  Williams was a close friend of defendant and his girlfriend, co-defendant Rosangela Tiru.  Indeed, Williams credited defendant with getting her the job at Burger King.
>
> The robbery occurred as the restaurant was closing.  Colbert was in the manager's office counting the day's receipts, and another employee, Terry Bistoquet, was putting garbage in the dumpster behind the restaurant.  When Bistoquet attempted to return to the building, a man with a ski mask pointed a gun at his head and demanded that Bistoquet let him into the restaurant.  When the two were inside, the masked man, later identified as defendant, herded all of the employees into the walk-in refrigerator, took the money from the manager's office and fled.
>
> Both Colbert and Bistoquet thought that the robber looked and sounded like defendant and identified him to the police.  After the robbery, it was learned that defendant had called Williams at work and asked her to leave the drive-thru window open for him to rob the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

> restaurant. She refused. Defendant later offered Williams $200 or $300 to keep quiet about the robbery, but Williams rejected the offer. Defendant's girlfriend, Tiru, called Williams after the robbery and said, "Girl, we did it."
>
> Defendant and Tiru were tried as co-defendants and Tiru was acquitted on all charges. At trial, Colbert and Bistoquet identified defendant from his voice and build.

See Ra 7 at pp. 2-3.

**B.   Procedural Background**

A Middlesex County Grand Jury returned an indictment charging Petitioner with first degree conspiracy to commit armed robbery, first degree armed robbery, third degree possession of a handgun without a permit, second degree possession of a handgun for an unlawful purpose, and third degree tampering with a witness, all in violation of New Jersey state law.

Trial was held in Middlesex County from February 11, 2003 to February 20, 2003. Petitioner, and his girlfriend, co-defendant Tiru, were tried together. Tiru was acquitted of all charges. Petitioner was convicted of armed robbery and witness tampering, and acquitted of all gun possession and conspiracy charges.

On May 5, 2003, Petitioner was sentenced to imprisonment for 16 years on the armed robbery charge, plus a 4-year, consecutive imprisonment term for witness tampering. Petitioner's sentence was pursuant to the No Early Release Act ("NERA"), which requires Petitioner to serve 85% of his term without the possibility of parole.

3

Petitioner appealed. On January 31, 2005, the Appellate Division affirmed the conviction and sentence. Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on July 18, 2005.

On September 22, 2005, Petitioner filed a pro se motion for post-conviction relief (PCR) in the sentencing court. The motion was denied on June 2, 2006. The Appellate Division affirmed the denial on June 4, 2009. Petitioner's petition for certification to the New Jersey Supreme Court was denied on October 8, 2009.

Petitioner filed this habeas petition on December 15, 2009, along with a Memorandum of Law in support of the petition. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Respondents filed an answer to the petition and the available state court record on or about April 12, 2010. Petitioner filed a reply to the answer on June 9, 2010.

**C.  Petitioner's Claims**

Petitioner cites two grounds for relief in his habeas petition: (1) that the verdict was against the weight of the evidence and was inconsistent; and (2) ineffective assistance of counsel. (Petition, ¶ 12).

4

## 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an

unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

7

Cir. 1989); <u>United States v. Brierlev</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert</u>. <u>denied</u>, 399 U.S. 912 (1970).

## **DISCUSSION**

**A.    Claim Regarding Verdict (Ground 1)**

In Ground 1, Petitioner argues, as he did on direct appeal, that there was an inconsistent verdict and lack of sufficient evidence to convict him.  The jury acquitted Petitioner of the weapons offenses, as well as the charges which accused him of conspiring with Tiru.  Petitioner argued on direct appeal that the conviction for armed robbery, therefore, was against the weight of the evidence.

The Appellate Division examined this claim at length and held:

> In his first point, defendant contends that his acquittal on the two weapons charges is inconsistent with his conviction for first degree robbery. ... he contends that the jury's acquittal on the gun possession charges negates the element of weapon possession essential to an armed robbery conviction. Defendant points to evidence the jury "could have relied on" to acquit him on the armed robbery charge and maintains that the evidence was insufficient to support the conviction.
>
> Inconsistent verdicts will be upheld if there is sufficient evidence to support the conviction beyond a reasonable doubt.  <u>Dunn v. United States</u>, 284 U.S. 390, 393 (1932); <u>United States v. Powell</u>, 469 U.S. 57, 65 (1984); <u>State v. Banko</u>, 182 N.J. 44, 55 (2004).  The rule applies when the reason for the inconsistent verdicts cannot be determined because we decline to "speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant."

>       Inconsistent verdicts may be reversed, however, "when an incomplete or misleading jury instruction causes an unfair trial." During deliberations, the jury made two requests for recharge of the definition of "deadly weapon." The requests were not unreasonable given the circumstance that the State had not recovered the weapon and did not, therefore, produce it at trial. Defendant argues that the jury was required to find him in possession of a deadly weapon in order to find him guilty of first degree robbery. We disagree.
>
>       A defendant is guilty of first degree robbery "if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1(b). "Deadly weapon" is defined in N.J.S.A. 2C:11-1(c) as:
>
>>    any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonable to believe it to be capable of producing death or serious bodily injury.
>
> Thus, it was reasonable and logical for the jury to believe the testimony of witnesses who stated that defendant was in possession of a "deadly weapon" at the time of the robbery and still not find beyond a reasonable doubt that the "deadly weapon" was, in fact, a handgun.
>
>       From the record before us, we can ascertain that the jury was concerned about the definition of "deadly weapon." We cannot, however, speculate on what the jury believed when it found defendant guilty of first degree robbery and acquitted him of the weapons charges. We are satisfied from the record, however, that there was more than sufficient evidence for the jury to find defendant guilty of first degree robbery.

Ra 7 at pp. 4-6 (some internal citations omitted).

In his Memorandum in support of his habeas petition, Petitioner argues that the Appellate Division decision was unreasonable, and that although the Appellate Division decision stated it would not "speculate" on what the jury used to convict Petitioner, Petitioner "did not ask the Appellate Division to 'speculate.' The claim raised on appeal was direct and straightforward. There was no such evidence presented, much less 'sufficient evidence for the jury to find [Petitioner] guilty of first degree robbery.'" (Memorandum, pp. 4-5). Petitioner also argues that the Appellate Division disregarded the full acquittal of Tiru. (Memorandum, p. 5).

It is well-established that a defendant, convicted by a jury on one count of the indictment, cannot attack that conviction because it is inconsistent with the jury's acquittal of another count. See Dunn v. United States, 284 U.S. 390, 393 (1932). So long as there is sufficient evidence to sustain the conviction for the charge of which the petitioner has been found guilty, a reviewing court will not disturb the conviction. See United States v. Messerlain, 832 F.2d 778, 798 (3rd Cir. 1987), cert. denied, 485 U.S. 988 (1988).

Thus, a claim that the jury's verdict was against the weight of the evidence may raise a due process concern, only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324, n.16. <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000).

Here, the evidence of first-degree armed robbery included Williams' testimony regarding her conversations with Petitioner and Tiru, and three identifications by Colbert, Bistoquet, and another witness, Perez. The testimony of these individuals revealed that "a man with a ski mask pointed a gun at [Bistoquet's] head and demanded that Bistoquet let him into the restaurant," herded the employees into the refrigerator, took the money and fled. It is clear that the elements of first degree armed robbery were met: in the course of committing the theft of the money, Petitioner threatened the use of a deadly weapon. Whether or not that deadly weapon was found beyond a reasonable doubt, to be a handgun, is a separate issue. As the Appellate Division found: "it was reasonable and logical for the jury to believe the testimony of the witnesses who stated that defendant was in possession of a 'deadly weapon' at the time of the robbery and still not find beyond a reasonable doubt that the 'deadly

11

weapon' was, in fact, a handgun." Ra 7 at p. 6.  This Court finds no flaw in that reasoning.

Here, for the reasons set forth above, Petitioner has not demonstrated that the first degree robbery verdict was not supported by sufficient evidence.  Citing <u>Dunn</u>, the New Jersey courts followed the relevant Supreme Court precedent.  Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  As such, Petitioner is not entitled to the writ with respect to this claim.

**B.    Ineffective Assistance of Counsel Claim (Ground 2)**

In Ground 2, Petitioner argues that he received ineffective assistance of counsel, because counsel (1) failed to "consult with Petitioner to effect a reasonable and solid plan of defense;" (2) failed to "move for a severance;" and (3) failed "to pursue a valid alibi defense."  (Memorandum, p. 12).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his

defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and

> factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In this case, the PCR judge examined Petitioner's claims in turn. First, the PCR judge cited and explained the Strickland prongs. See Ra32 (Part II) at pp. 10-11. With respect to Petitioner's claim that counsel did not establish a solid plan of defense and did not consult with Petitioner, the PCR court found:

> The court finds that defendant has failed to present a prima facie case of ineffective assistance of counsel regarding the attorney's failure to consult with petitioner to effect a reasonable and solid plan of defense in which petitioner could viably participate. Defense counsel presented a competent defense at trial, including the alibi defense based on the hotel receipt, an objective piece of evidence that

14

> placed defendant somewhere other than the Burger King at the approximate time of the armed robbery.
>
> Again, the courts must avoid second-guessing trial attorney's tactical decision, and viewing those decisions under distorting effects of hindsight.

Ra 32 (Part II) at pp. 12-13. At the PCR hearing, however, PCR counsel noted that there was an ongoing investigation concerning alibi witnesses. Counsel stated: "And the investigation, the alibi, my client was not clear as to the alibi, the person who the alibi defense would be. We have letters going back and forth, and finally recently my client gave me the specifics of the alibi and I immediately requested an investigation and requested a one-week return date of May 15, and it has not happened. I called my alibi witness, and I was unable to get a hold of her." Ra 32 (Part II) at p. 14. Petitioner's PCR counsel was told that the denial of this claim was without prejudice, "so if you want to reopen this, if you ever complete the [alibi] investigation . . ." that "you know you can reopen that if you want to." Id. As far as this Court can ascertain, the matter was not reopened.

As to the second argument, that counsel should have requested severance of Petitioner and Tiru's trials, the PCR judge found:

> So this court finds there's not a reasonable likelihood the case would have been severed had the defense counsel made the motion to sever. These defendants were accused of the same crime and the evidence against each of them was mostly the same. The

15

> defense strategies of each defendant were not antagonistic, so it's highly unlikely that a motion to sever would have been granted.
>
> We know that we, we try to try things together if possible unless there's serious problems. There's no serious problems here. I think the whole case of the defendant was identity, right? It was really identity.

Ra 32 (Part II) at p. 15. Finally, as to Petitioner's claim that counsel did not adequately investigate and interview witnesses sufficiently, the PCR judge found, "there's no allegations of specific facts or defense strategies that could have been employed that would have resulted in a different outcome." Ra 32 (Part II) at p. 16.

The Appellate Division reviewed the PCR judge's denial of relief and Petitioner's ineffective assistance of counsel claims. Citing <u>Strickland</u>, the Appellate Division held:

> In his first point, defendant claims that trial counsel should have investigated his alibi witnesses. He argues: "Had a basic investigation been conducted, counsel could have learned for a fact whether Kiran Patel and/or Nessie Agusto would have been able to testify that defendant was already at the Days Inn by the time the robbery was committed." Defendant overlooks the fact that he did not even take the opportunity given to him by the trial court to develop his purported alibi defense and present the evidence to that court. Here, he merely states that the witnesses were not contacted and no alternative theories were presented at trial.
>
> He further argues that trial counsel was ineffective for failing to move to suppress any of the evidence or testimony or to sever defendant's trial from that of his co-defendant. Again, however, defendant does not proffer any basis for these claims. He merely states that when he was tried with the co-defendant, he "was forced to bear the burden of

> defending both the State's charges and co-defendant Tiru's attempts to distance himself from defendant."
>
> None of these arguments are supported by any proffers of evidence that may have changed the outcome of the trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984). There are no certifications from potential witnesses describing their testimony and defendant offers no reasonable grounds for suppression of evidence.
>
> In his second point, defendant argues ineffective assistance of both trial and appellate counsel. He claims that appellate counsel was inadequate because he failed to raise trial counsel's errors and trial counsel failed to investigate facts, raise the alibi defense, interview witnesses sufficiently or cross-examine witnesses sufficiently. Again, he gives no details and makes only bare allegations.
>
> Defendant also argues that PCR counsel was deficient because he failed to include the names of the possible alibi witnesses, one of whom could have testified as a "completely independent and unbiased witness." Even in this appeal, however, there are no proffers of testimony by the witnesses.
>
> In short, defendant's arguments lack sufficient merit to warrant further discussion in this opinion. We affirm substantially for the reasons set forth by Judge James Mulvihill on the record of June 2, 2006.

<u>See</u> <u>State v. Fosque</u>, 2009 WL 1544101 (N.J. App. Div. June 4, 2009)(some internal citations omitted).

This Court finds that a review of the record reveals that Petitioner's counsel was not ineffective, for the reasons set forth by the PCR judge in the Opinion denying his claims. There is nothing presented demonstrating that counsel was deficient below an objective standard of reasonableness; nor has Petitioner demonstrated that even if counsel were deficient, the outcome

would have been different had counsel not been.  Here, the evidence against Petitioner was, as described by the PCR judge, "overwhelming in terms of description, the voice, the people who identified him, his voice, his build and the other evidence in terms of the phone calls he made before and after . . . .  It was overwhelming evidence, and the defendant was convicted."  Ra 32 (Part II) at pp. 17-18.  This Court agrees.

As the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## **CONCLUSION**

For the reasons set forth above, the petition will be denied. An appropriate order follows.

/s/ JOEL A. PISANO
JOEL A. PISANO
United States District Judge

Dated: March 4, 2011